UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
YWEN STEDFORD,

                    Plaintiff,

    -against-                                       **REPORT &amp; RECOMMENDATION**

UNITED STATES OF AMERICA,            20-CV-5782 (LDH)(MMH)

                    Defendant.

------------------------------------------------------------------------x

**MARCIA M. HENRY**, United States Magistrate Judge:

      In November 2020, Plaintiff Ywen Stedford ("Plaintiff" or "Stedford") initiated this action against Defendant United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*, for damages resulting from injuries allegedly sustained in a motor vehicle accident involving a Navy Department ("Navy") vehicle driven by a Navy employee. (*See generally* Compl., ECF No. 1.)[1] Before the Court is Plaintiff's motion to amend the *ad damnum* amount in his administrative claim from $3,265,000 to $11,213,803. (Pl. Mot., ECF No. 18 at 1.) The Honorable LaShann DeArcy Hall referred the motion for a report and recommendation. For the reasons stated below, the Court respectfully recommends that the motion should be **denied**.

**I.    BACKGROUND**[2]

    **A. Plaintiff's Injury and Initial Medical Treatment**

      On January 24, 2020, Plaintiff was injured on the Jackie Robinson Highway in Brooklyn, New York when a Dodge SUV owned by the Navy and driven by a Navy employee rear-ended his

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "Document ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] The Court relies on the Complaint (ECF No. 1) and the parties' submissions on the motion. Plaintiff's Motion (ECF No. 18) ("Pl. Mot.") includes a memorandum of law (ECF No. 18-1) ("Pl. Mem."), the Declaration of Matthew D. Goodstein (ECF No. 18-2) ("Goodstein Decl."), and the declaration's 13 exhibits (ECF Nos. 18-3 to 18-15) ("Goodstein Decl. Ex. ___, ECF No. ___").

1

car. (*See* Compl., ECF No. 1 ¶¶ 8–11.) Both vehicles sustained damage and were towed from the scene. (*Id.* ¶ 13.) Plaintiff received medical treatment from EMS personnel at the scene of the accident, but did not go to a hospital. (Goodstein Decl., ECF No. 18-2 ¶ 3.)

The next day, January 25, 2020, Plaintiff sought medical treatment for neck pain, arm pain, lower back pain, right leg pain, and stiffness at AFC Urgent Care Howard Beach ("AFC"), an urgent care center. (Goodstein Decl. Ex. 4, ECF No. 18-6 at 1–2.) X-rays of Plaintiff on this date showed abnormal straightening of the cervical curve and mild scoliosis of the thoracic spine. (Goodstein Decl., ECF No. 18-2 ¶ 3; Goodstein Decl. Ex. 4, ECF 18-6 at 7–8.) The treating certified physician's assistant diagnosed Plaintiff with lumbar spine ligament sprain and treated Plaintiff with an intramuscular injection, muscle relaxants, and pain medications. (Goodstein Decl. Ex. 4, ECF 18-6 at 3.) Plaintiff was also excused from work for two days. (*See id.* at 6.)

Two days later, on January 27, 2020, Plaintiff returned to AFC and reported back pain. (*Id.* at 12.) Plaintiff's pain medication was updated and he was advised to follow up with an orthopedist. (*Id.* at 14.) Plaintiff also received additional time off work and was advised to avoid specific physical activities such as kneeling and prolonged standing. (*Id.* at 16.)

Plaintiff sought treatment at Liberty Park Chiropractic a few days later on January 31, 2020. (Goodstein Decl., ECF No. 18-2 ¶ 4.) Plaintiff complained of pain in the cervical, thoracic, and lumbar spine; both hips; and both legs. (Goodstein Decl. Ex. 5, ECF No. 18-7 at 1.) The provider recommended that Plaintiff obtain an MRI of the cervical and lumbar spine "to rule out suspected disc macro trauma." (Goodstein Decl. Ex. 5, ECF No. 18-7 at 6, 36.) The provider also

---

Plaintiff also filed a reply brief (ECF No. 22) ("Pl. Reply"). Defendant's opposition includes a memorandum of law (ECF No. 23) ("Def. Mem."), the Declaration of David A. Cooper (ECF No. 23-1) ("Cooper Decl."), and that declaration's two exhibits (ECF Nos. 23-2 to 23-3) ("Cooper Decl. Ex. ___, ECF No. ___").

noted that Plainitff's prognosis was "guarded" and "deferred until further observation and management." (*Id.* at 7.)

Shortly thereafter, on February 3, 2020, Plaintiff consulted Dr. Henry Kim seeking treatment for "severe pain to the head, cervical, thoracic, and lumbar spine, both shoulders, and both hips." (Goodstein Decl., ECF No. 18-2 ¶ 4.) Dr. Kim diagnosed various sprains and strains of the cervical, thoracic, and lumbar spine, and post-traumatic pain. (*See id.*) The proposed treatment included physical therapy, orthopedic evaluation, chiropractic evaluation, pain management and "EMG/NCV" testing.[3] (Goodstein Decl. Ex. 5, ECF No. 18-7 at 14–15.) Similar to Liberty Park Chiropractic, Dr. Kim also recommended MRIs of the cervical and lumbosacral spine and other tests to rule out disc herniation and "for complete medical evaluation" of Plaintiff's condition. (*Id.* at 14.) Dr. Kim advised Plaintiff "of the possibility of changes in symptoms as time and treatment progress." (*Id.*) Dr. Kim also gave Plaintiff a "guarded" prognosis, noting that "[o]verall prognosis for full and complete recovery is difficult to determine at this time" and that "[a]dditional diagnostic test [*sic*] will be performed to determine the full extent of the injury[.]" (*Id.* at 15.)

Around the same time period, Plaintiff conducted a series of diagnostic tests at Dr. Kim's practice and at JPM Physical Therapy indicating, *inter alia*, substantial "spinal disability" and various spinal impairments. (Goodstein Decl. Ex. 5, ECF No. 18-7 at 26–27, 34–35.) He also continued with physical therapy treatments over several months. (Goodstein Decl., ECF No. 18-2 ¶ 4; *see also* Goodstein Decl. Ex. 5, ECF No. 18-7 at 38–62 (records reflecting physical therapy

---

[3] Electromyography (EMG) and nerve conduction velocity (NCV) are electrodiagnostic tests that measure the electrical activity of muscles and nerves to rule out specific muscle or nerve disorders. *See* "Electromyography (EMG) and Nerve Conduction Studies," Medline Plus, Nat'l Library of Medicine, https://medlineplus.gov/lab-tests/electromyography-emg-and-nerve-conduction-studies/.

3

and chiropractic treatment from Dr. Edward Paul Desvernine between February 2020 and September 2020).)

On February 26, 2020, Dr. Donghui Chen of Innovation Pain Services administered a cervical trigger point injection to Plaintiff for pain management. (Goodstein Decl., ECF No. 18-2 ¶ 5.) Plaintiff described his neck, shoulder, hip, mid-back, and lower-back pain as "stabbing, throbbing, [and] aching." (Goodstein Decl. Ex. 6, ECF No. 18-8 at 1-2.) Dr. Chen assessed multiple potential diagnoses, including neck and back radiculopathy (*i.e.*, pinched nerves),[4] various sprains and strains of the cervical, thoracic, and lumbar regions. (*Id.* at 4.) Dr. Chen advised the Plaintiff to continue physical therapy and chiropractic and acupuncture treatment.[5] (*Id.* at 5.)

### B.  Plaintiff's Initial SF-95

On March 6, 2020, counsel for Plaintiff filed an administrative claim on his behalf by submitting a Standard Form 95 ("SF-95") to the Navy Department, claiming $15,000 in property damage and $3,250,000 for personal injuries. (Goodstein Decl. Ex. 7, ECF No. 18-9 at 1.) Plaintiff reported that he:

> suffer[ed] severe and permanent personal injuries including injuries to his neck, back, and bilateral shoulders; permanent loss of range of motion of affected body parts; significant limitations in use of affected body parts; may require surgical intervention; required emergency care and attention and will require medical care and attention in the future; requires physical therapy; may require diagnostic MRI and EMG/NCV testing; may require surgical intervention; expected to be unable to perform substantially all activities of daily living for not less than 90 of the first

---

[4]  *See* "Herniated Disk," Medline Plus, Nat'l Library of Medicine, https://medlineplus.gov/ency/article/000442.htm.
[5] At a follow-up visit on July 15, 2020, Dr. Chen administered the same trigger point injection and reiterated his assessment and treatment plan. (Goodstein Decl. Ex. 5, ECF No. 18-7 at 7–12.)

4

> 180 days after the accident; serious injuries within the meaning of Insurance Law § 5102; and has been otherwise damaged, all of which damages are permanent.

(*Id.* at 3–4.) The submission included, *inter alia*, the reports of X-rays taken when Plaintiff sought treatment at AFC on January 25, 2020, and medical records from AFC, Liberty Park Chiropractic, Dr. Kim, and JPM Physical Therapy between January 2020 and February 2020. (*Id.* at 7–32, 36–39.)

### C. Plaintiff's Medical Treatment After the Initial SF-95

After the SF-95 was filed, Plaintiff continued examinations and treatment for back pain. On March 9, 2020, Plaintiff received MRI scans which revealed "posterior disc bulges" in the cervical spine, "broad-based posterior central subligamentous herniation" in the lumbar spine, and "impingement of the central aspect of bilateral descending L4 nerves, along with signal loss at this level with posterior central annular tear." (Goodstein Decl., ECF 18-2 ¶ 7; *see also* Goodstein Decl. Ex. 8, ECF No. 18-10.) Shortly thereafter, Dr. Rummel Mendoza administered an Electromyography ("EMG") exam, which showed evidence of cervical and lumbar radiculopathy, consistent with earlier examinations. (Goodstein Decl. Ex. 9, ECF 18-11 at 1.)

Dr. Hank Ross, an orthopedic surgeon, first examined Plaintiff on March 19, 2020 and diagnosed cervical sprain/strain syndrome and herniated discs in the lumbar spine. (Goodstein Decl. ¶ 8; *see also* Goodstein Decl. Ex. 10, ECF No. 18-12 at 2.) During that visit, Dr. Ross discussed various treatments, including surgery, prescribed a lumbosacral brace and ongoing physical therapy. (Goodstein Decl. Ex. 10, ECF No. 18-12 at 2.) On May 14, 2020, Plaintiff again saw Dr. Ross and received trigger point injections. (*Id.* at 3.) During this second visit, Dr. Ross again discussed surgery with Plaintiff, who was "reluctant" to consider the option. (*Id.*)

Between July 2020 and October 2020, Plaintiff received treatment at the New York Spine Institute. (Goodstein Decl. Ex. 11, ECF No. 18-13 at 23–28, 32–49.) On September 10, 2020, Dr.

5

Angel Macagno, an orthopedic and spinal surgeon, reviewed Plaintiff's MRIs taken in March 2020 and diagnosed "cervical and lumbar herniations with radiculopathy." (*Id.* at 45.) Dr. Macagno also examined Plaintiff and recommended multiple treatments, including posterior spinal fusion surgery. (*Id.*) Dr. Macagno performed that surgery on October 22, 2020. (Goodstein Decl., ECF No. 18-2 ¶ 11.)[6]

Nearly one year after the surgery, on September 9, 2021, Dr. Macagno described Plaintiff's condition as improved, but subsequently deteriorating with "numbness and tingling to bilateral lower extremities." (Goodstein Decl., ECF No. 18-2 ¶ 12; *see also* Goodstein Decl., ECF No. 18-13 at 16.)[7] According to his assessment, Plaintiff will be unable to continue his job as a maintenance worker and will need additional surgeries every 10 to 12 years for the rest of his life. (Goodstein Decl., ECF No. 18-2 ¶ 12.)

### D. Plaintiff's Amended SF-95

Plaintiff submitted an amended SF-95 on October 21, 2021, increasing the demand for personal injuries from $3,250,000 to $11,198,803 while maintaining the request for $15,000 in property damage. (*Id.* ¶ 14; Goodstein Decl. Ex. 13, ECF No. 18-15.) The increased demand is based on an economic loss expert analysis, which estimated Plaintiff's total economic losses as

---

[6] Plaintiff returned for post-operative visits between November 2020 and July 2021. (Goodstein Decl. Ex. 11, ECF No. 18-13 at 1–11; 18–36.)

[7] While counsel describes this medical opinion as a "narrative note" (Goodstein Decl., ECF No. 18-2 ¶ 12), it is unclear whether Dr. Macagno actually examined Plaintiff during this visit. (Goodstein Decl. Ex. 11, ECF No. 18-13 at 12–17.)

$7,948,803, consisting of $2,694,623 in total income losses and $5,254,180 for future health care costs. (*See id.* ¶ 13; Goodstein Decl. Ex. 12, ECF No. 18-14 at 3–4.)

### E. The Instant Action

Plaintiff initiated this action on November 30, 2020, asserting a cause of action for negligence causing "severe and permanent personal injuries, physical pain and suffering, mental and emotional pain and suffering, loss of property, lost income, and other pecuniary and non-pecuniary damages." (Compl., ECF No. 1 at ¶¶ 14, 23.) The Complaint was served on Defendant on December 14, 2020. (ECF No. 6.) On January 18, 2021, the Navy Department denied the initial SF-95 because "although administrative review of the claim [had] not been completed, . . . [t]he filing of suit terminates administrative adjudication of a claim." (Cooper Decl. Ex. B, ECF No. 23-3 at 2.) Defendant answered the Complaint on February 12, 2021. (ECF No. 8.)

On November 19, 2021, Plaintiff requested a pre-motion conference for an anticipated motion to amend the personal injuries portion of the *ad damnum* clause in his SF-95, which Defendant opposed on November 29, 2021. (Pl. Ltr., ECF No. 13 at 1; Def. Ltr., ECF No. 14.) The Court denied the request and ordered briefing. (Dec. 28, 2021 Order.)

Plaintiff filed the motion to amend his *ad damnum* clause on January 27, 2022. (*See generally* Pl. Mot., ECF No. 18.) Plaintiff argues that the MRIs and subsequent spinal fusion surgery constitute "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency," and seeks to amend the *ad damnum* clause from $3,265,000 to $11,213,803. (Pl. Mem., ECF No. 18-1.)

Defendant served its opposition on February 28, 2022 and filed the submission on March 14, 2022. (Def. Mem., ECF No. 23.) Defendant counters that Plaintiff's surgery is not "newly discovered"; instead, it was foreseeable based on the statements in his initial SF-95 and his

7

treatment providers' diagnoses. (Def. Mem., ECF No. 23 at 7–10.) Defendant further argues that amendment is not warranted because Plaintiff failed to amend the *ad damnum* clause before initiating this lawsuit. (*Id.* at 10–11.) Plaintiff filed a reply on March 11, 2022, rejecting both arguments. (Pl. Reply, ECF No. 22.)

Judge DeArcy Hall referred the motion to the undersigned for report and recommendation. (Mar. 14, 2022 Order.)

## II. **LEGAL STANDARD**

Under the FTCA, "a tort action 'shall not be instituted . . . against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency' for its review." *Collins v. United States*, 996 F. 3d 102, 109 (2d Cir. 2021) (quoting 28 U.S.C. § 2675(a)). Any such action may not exceed the administratively presented amount "except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). A claim is "presented" when a claimant submits an executed SF-95 or other written notification and "a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident[.]" 28 C.F.R. § 14.2(a).

A party seeking to amend an *ad damnum* demand must satisfy the requirements of 28 U.S.C. § 2675(b), a stricter standard than the general amendment process of Federal Rule of Civil Procedure 15. *O'Rourke v. E. Air Lines, Inc.*, 730 F.2d 842, 855–56 (2d Cir. 1984) (quoting 28 U.S.C. § 2675(b)), *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991); *Thomas v. United States*, No. 20-CV-3489 (ARR)(CLP), 2021 WL 1084672, at *4 (E.D.N.Y. Mar. 22, 2021). Plaintiffs bear the burden of proving their "strict" compliance with the

8

mandates of the FTCA. *Malmberg v. United States*, 816 F.3d 185, 196 (2d Cir. 2016) (quoting *O'Rourke*, 730 F.2d at 856).

"The Second Circuit has suggested that plaintiffs must show that some new and previously unforeseen information came to light following the filing of the administrative claim." *Thomas*, 2021 WL 1084672, at *4 (internal citation and quotations omitted). "Generally the 'newly discovered evidence' exception is applied when a plaintiff is unaware of the medical extent of his injuries and expenses at the time his administrative complaint is filed[.]" *Tursi v. United States*, No. 13-CV-4756 (SLT)(VMS), 2017 WL 3610516, at *5 (E.D.N.Y. Aug. 21, 2017). "Thus, if the condition was reasonably foreseeable at the time the plaintiff filed his administrative claim, the court will not allow him to increase the *ad damnum* clause." *Voccia v. United States*, No. 12-CV-5909 (KAM), 2016 WL 2636253, at *2 (E.D.N.Y. May 6, 2016) (citation omitted).

### III. ANALYSIS

Plaintiff fails to establish that his MRI, spinal fusion surgery, and prognosis of additional surgeries are "newly discovered evidence" that were "not reasonably discoverable" when he filed his initial administrative claim on March 9, 2020. *See* 28 U.S.C. § 2675(b); *Voccia*, 2016 WL 2636253, at *2.

Plaintiff argues that, because none of his medical providers mentioned surgery before the initial SF-95 was filed, it was not foreseeable that Plaintiff would need surgery. (Pl. Mem., ECF No. 18-1 at 6.) However, "[n]ewly discovered evidence means that the new developments must not have been reasonably capable of detection at the time of the initial claim. It is not enough that the extent of the injury was not discovered or contemplated due to the lack of a more thorough

9

examination which could not have been conducted earlier." *Delano v. United States*, No. 08-CV-610C, 2010 WL 3386835, at *3 (W.D.N.Y. Aug. 25, 2010).

When Plaintiff filed his SF-95, he had not yet completed reasonable efforts to understand the extent of his condition, such as undergoing MRIs or NCM/EGV testing, as several medical providers recommended. (*See, e.g.*, Goodstein Decl. Ex. 5, ECF 18-7 at 6–7 (records from January 31, 2020 recommending that Plaintiff obtain an MRI); *id.* at 14–15 (February 3, 2020 diagnostic plan which includes follow-up with an orthopedist and several tests "for complete medical evaluation of [Plaintiff's] condition").) Indeed, on March 19, 2020, Dr. Ross, the orthopedic surgeon, reviewed Plaintiff's March 9, 2020 MRI and discussed surgery as one of several treatment options. (Goodstein Decl. Ex. 10, ECF No. 18-12 at 2.)[8] In other words, "if [Plaintiff] had simply requested the relevant medical testing before filing [his] claim, the results would have been the same." *Li v. Aponte*, No. 05-CIV-6237 (NRB), 2008 WL 4308127, at *12 (S.D.N.Y. Sept. 16, 2008). Instead, he filed his administrative claim with minimal information and then further investigated his injuries. To allow amendment under these circumstances "would invite plaintiffs to race to file their administrative claims without conducting any due diligence into the extent of their injuries, precisely the result that section 2675(b) sought to avoid." *Id.*

Moreover, none of Plaintiff's treatment providers ruled out Plainitff's future need for surgery, undermining his claim that the surgery was "unexpected." *See Tursi*, 2017 WL 3610516, at *6 (denying amendment where Plaintiff's orthopedist "provided no opinion on the issue of foreseeability; he opined only about causation . . . Consequently, [Plaintiff's doctor] did not opine that the knee replacement surgery was an unexpected medical procedure."); *cf. MacDaniel v. U.S.*

---

[8] This contradicts Plaintiff's argument that no medical professional mentioned surgery until May 2020. (Pl. Mem., ECF No. 18-1 at 6.)

10

*Postal Serv.*, No. CIV. 3:97-CV-667, 1999 WL 33921854, at *2 (D. Conn. Aug. 20, 1999) (permitting amendment where medical records show no indication that treating physician foresaw back surgery). Plaintiff offers no evidence that any doctor, applying his or her expertise, affirmatively stated that he would never require surgery. Instead, multiple medical professionals offered "guarded" prognoses and recommended reevaluation on an ongoing basis. (*See, e.g.*, Goodstein Decl. Ex. 5, ECF 18-7 at 6–7, 14–15.) The information at Plaintiff's disposal when he filed his administrative claim was that he had a back injury that needed further evaluation and treatment. There is nothing in the record indicating that it was unforeseeable that these evaluations and treatment were not just the initial steps in diagnosing a serious injury.

Additionally, Plaintiff's own SF-95 also undermines any claims that surgery was unforeseeable at the time of its filing. Plaintiff stated that he "was caused to suffer severe and permanent personal injuries including injuries to his neck, back and bilateral shoulders . . . [and] may require surgical intervention[.]" (Goodstein Decl. Ex. 7, ECF No. 18-9 at 3; *see also id*. ("may require medical care and attention in the future").)[9] Plaintiff claims that such "boilerplate" language could not predict future injuries and treatment. (Reply, ECF No. 22 at 4.) But the averments in an SF-95 cannot be deemed "boilerplate" when false statements therein risk criminal and civil penalties for the applicant, and the applicant is so advised at the time of filing. *See* 31 U.S.C. § 3729 (civil penalties for presenting a false or fraudulent claim for payment or approval); 18 U.S.C. § 287 (criminal penalties for false claims to a federal agency); *id.* § 1001 (criminal penalties for false statements in connection with matters within the U.S. government's jurisdiction); *see also* Goodstein Decl. Ex. 7, ECF No. 18-9 at 1 (SF-95 notice regarding penalties

---

[9] Notably, "may require surgical intervention" is stated twice in the statement of injury. (Goodstein Decl. Ex. 7, ECF No. 18-9 at 3.)

11

for false or fraudulent claims). By submitting a claim with this language, Plaintiff represented that he believed these statements to be true. Moreover, the exhibits to SF-95 include Plaintiff's medical records through February 2020, before his first MRI in March 2020, which strongly suggests that he relied on the records in anticipation of "surgical intervention" and future medical care. (*See* Goodstein Decl. Ex. 7, ECF No. 18-9 at 7–32, 36–39.) Given the statements and materials in the administrative claim, Plainitff cannot plausibly claim now that he did not foresee his MRI results or back surgery at the time he filed the SF-95.

For these reasons, Plaintiff's reliance on *Castelluccio v. United States*, No. 1:17-cv-190 (TJM)(DJS), 2019 WL 7753277 (N.D.N.Y. Dec. 20, 2019), is misplaced. In that case, the court found that plaintiff's MRI (revealing injuries that he did not include in his SF-95) and subsequent surgery was not foreseeable because his doctor initially believed that only physical therapy would address his condition. *Castelluccio*, 2019 WL 7753277, at *4. Here, Plaintiff's SF-95 states that he suffered "injuries to his neck, back, and bilateral shoulders; permanent loss of range of motion of affected body parts [and] significant limitations in use of affected body parts" that "may require surgical intervention," and his doctors urged additional treatment and evaluation. (Goodstein Decl. Ex. 7, ECF No. 18-9 at 3; Goodstein Decl. Ex. 5, ECF 18-7 at 6–7, 14–15.) The subsequent MRI

12

and back surgery simply do not present "newly discovered evidence." *Li*, 2008 WL 4308127, at *12; *Voccia*, 2016 WL 2636253, at *2; *Thomas*, 2021 WL 1084672, at *4.

In sum, Plaintiff's purportedly new facts do not justify amendment of the *ad damnum* clause.[10]

## IV. CONCLUSION

Based on the foregoing, the Court respectfully recommends that Plaintiff's motion to amend the *ad damnum* clause at ECF No. 18 should be **denied**.

Within 14 days, any party may serve and file objections to this report and recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
August 31, 2022

          /s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

---

[10] Defendant also argues that Plaintiff should not be permitted to amend his demand because he failed to do so while his administrative claim was pending. (Def. Mem., ECF No. 23 at 10–12.) The Court need not consider this argument because Plaintiff fails to meet his burden of proof pursuant to § 2675(b). Notably, however, the government's argument is undermined by the permissive language in the FTCA's governing regulation. 28 C.F.R. § 14.2(c) ("A claim presented in compliance with [28 C.F. R. § 14.2(a)] *may* be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a).") (emphasis added).

13